UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES E. BAKER, JR.,

    Petitioner,

v.

JOHN MARSHALL, et al.,

    Respondent.[1]

No. 2:06-cv-00307-RCT

**MEMORANDUM DECISION AND ORDER**

This matter comes before the Court on Charles E. Baker, Jr.'s petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## INTRODUCTION

Petitioner Baker is a state prisoner currently incarcerated at the California Men's Colony in San Luis Obispo, California. He filed for a writ of habeas corpus to challenge his San Joaquin County convictions for assault with a deadly weapon, battery, infliction of injury, and criminal threats. He initially raised four issues in his petition: improper jury instruction, ineffective assistance of counsel, improper

---

[1] John Marshall is substituted for his predecessor, David L. Runnels, as the warden where the petitioner is incarcerated, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1

failure to strike prior convictions, and witness perjury. The third claim was dismissed by a prior order on September 11, 2007. The fourth claim has not been properly exhausted in the state courts and is dismissed in a separate Order filed simultaneously with this disposition. The remaining two issues are addressed here. A review of the record shows the California Court of Appeal, Third Judicial District, correctly applied U.S. Supreme Court law in rejecting both claims. 28 U.S.C. § 2254(d). Accordingly, the petition is denied and the case is dismissed with prejudice.

## PROCEDURAL AND FACTUAL HISTORY

Baker filed this petition for writ of habeas corpus to challenge his San Joaquin County Superior Court convictions and resulting sentence of thirty-six years to life imprisonment.

The Third District Court of Appeal summarized the facts of the case as follows:

> Baker and the victim were married at the time of the offenses (July 2001), but Baker had been participating in a residential drug treatment program. Baker and the victim were on good terms, and the victim spent the day with Baker on July 3 and took him back to the drug rehabilitation center.
> On July 4, the victim, her stepsister, Tracey, and Tracey's five-year-old son went to San Francisco to see the fireworks. After midnight, the victim's daughter, Shantillia, found Baker on the porch of the victim's house and noticed the door, which had been

locked when she left, was open. Baker asked where the victim was and eventually told Shantillia to call her for him. Shantillia contacted the victim a couple of times for Baker by calling Tracey's cell phone. According to the victim, Baker said he wanted to talk to her when she got home and indicated he was tired of the mess she was putting him through.

When the victim, Tracey, and Tracey's son returned, Baker approached and demanded that the victim get out of the car because he wanted to talk to her. The victim said she needed to take some things into the house first, and Baker helped her. Tracey and her son also went inside. Afterwards, Baker and the victim went outside because Baker wanted to speak with her alone.

The victim turned around to talk to Baker when they were in the yard, and he punched her in the eye. The victim was not injured. Baker subsequently threw her to the ground, pulled out a knife, and said he was "tired of her mess" and was going to kill her. He was moving the knife in a sideways motion while the victim was on the ground, and he ended up cutting her right hand when she put it up to defend herself. She asked Baker why he cut her, and Baker told her to shut up and not to scream or he would kill her. The victim screamed.

Tracey testified that she ran outside after hearing the victim screaming, and she saw Baker holding the knife up and the victim bleeding from the neck. When Tracey asked why Baker was doing "this," he "just kept stabbing" the victim. Shantillia testified taht when she went outside, she could not tell if the victim was bleeding. Shantillia called 911. The victim remembered Tracey telling him to stop and Baker telling Shantillia he would kill the victim if Shantillia called the police; the victim said the next thing she knew Baker was stabbing her. According to Shantillia, Baker repeatedly said he was going to kill the victim.

Tracey screamed at Baker and pushed him. Baker threw his knife down and started to leave, but then came back, picked it up, and ran away. Shantillia threw down the phone, went inside to get a knife, and then pursued Baker until he eventually turned around and threatened her. When Baker was arrested that night, police did not notice any injuries on him or recall him complaining of any. A

3

knife handle was found in the front yard of the victim's residence, but the blade was not recovered.

The victim sustained multiple stab wounds, including lacerations to her neck, hands, fingers, back, buttocks, and legs. Some of the wounds were superficial and some more serious; one serious injury was a cut in her left hand that penetrated the bone. The victim testified at trial concerning how she was injured: "At first when he threw me down, he was sitting on me. And I guess somewhere during the incident I ended up turning over and I ended up on my stomach. And that's how I got stabbed in the neck and the back."

Evidence was also presented at trial concerning a prior incident involving the same victim that occurred on Thanksgiving in 1998. Baker threatened to hurt the victim and went into the kitchen, and it sounded as if he was getting something from the silverware drawer, such as a knife. The victim grabbed the phone and ran outside, but Baker also went outside and nearly hit her with his truck.

Baker testified in his own defense. He said he had wanted to talk to the victim about his plan to go back to work as a truck driver. He admitted he had asked the victim to come talk to him outside, but he claimed she brandished a knife after he skipped a step going down the stairs. Baker got cut and then struggled with the victim to get the knife, and she cut herself in the process. The victim yelled, and Shantillia and Tracey came outside carrying knives. Baker grabbed the victim by her ponytail and tried to place her between himself and the other women. Tracey tried to stab him but must have ended up stabbing the victim, and Shantillia was also moving her knife around. Further, Baker might have inadvertently stabbed the victim during the altercation. When Tracey's son came outside, Baker saw an opening to escape.

Baker also testified about an incident that occurred some time around the spring of 1984, in which the victim purportedly shot at him after catching him with another woman.

Baker was convicted by a jury of assault with a deadly weapon or by means

of force likely to produce great bodily injury (Cal. Penal Code § 245(a)(1)), battery with serious bodily injury (Cal. Penal Code § 243(d)), infliction of injury on a spouse, cohabitant, or parent of his child (Cal. Penal Code § 273.5(a)), and criminal threats (Cal. Penal Code § 422). As to the first three offenses, the jury further found that Baker had personally inflicted great bodily injury upon the victim under circumstances involving domestic violence (Cal. Penal Code § 12022.7(e)).

The trial court found that Baker had a prior serious felony conviction (Cal. Penal Code § 667(a) and four strikes under California's Three Strikes law (Cal. Penal Code § 667(b)-(i), 1170.12). Baker's motion to strike his prior convictions was denied and he was sentenced to an aggregate prison term of 36 years to life.

On March 28, 2003, Baker filed a notice of appeal, raising the four claims presented here. On December 28, 2004, the California Court of Appeal, Third Appellate District, affirmed Baker's conviction.

Baker filed a petition for review with the California Supreme Court on February 4, 2005. In his petition, he raised three of the claims presented here: Claim 1: improper jury instruction; Claim 2: ineffective assistance of counsel; and Claim 3: improper failure to strike prior convictions. He failed to raise his witness perjury claim. The California Supreme Court denied the petition on March 16,

2005.

On February 13, 2006, Baker filed this petition for writ of habeas corpus. On October 30, 2006, Respondents filed a motion to dismiss Baker's third claim, which challenged the trial court's failure to strike his prior convictions, on the ground that it rested entirely on state law grounds. United States District Judge Garland Burrell granted the motion on September 11, 2007.

On June 6, 2007, this Court directed Baker to file a motion for a stay and abeyance with respect to the unexhausted fourth claim of his petition concerning alleged perjury by prosecution witnesses. Baker had not raised this claim in his petition for review before the California Supreme Court. Baker filed a document styled, "Declaration In Support of a Motion for Stay and Abeyance" on August 17, 2007. However, Baker failed to address the issues specified in the court's June 6 order, and Judge Burrell denied the request for a stay and abeyance on November 29, 2007. Baker's fourth claim is therefore dismissed with prejudice in a separate Order filed concurrently with this Memorandum.

The Court ordered Respondents to file an answer addressing Baker's first and second claims, improper jury instruction and ineffective assistance of counsel. Respondents filed the answer on January 17, 2008, and lodged relevant portions of the record. They concede Baker's remaining two claims have been fully exhausted

and are properly before the Court.

## CLAIMS

We address the following exhausted claims from Baker's original petition:

1. The trial judge should have issued sua sponte a specific jury instruction on antecedent threats and self-defense and failed to do so in violation of Baker's right to a fair trial.
2. Baker was denied effective assistance of counsel because his attorney failed to request a specific jury instruction on his self-defense theory.

## LEGAL STANDARD

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle

from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

A determination of a factual issue by a state court is presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## DISCUSSION

### 1. Jury Instruction

Baker argues the trial court erred in omitting two instructions related to his self-defense claim. He contends the court should have issued CALJIC Nos. 5.50.1, which instructs that antecedent threats or assaults justify quicker or harsher self-defense measures, and 5.15, which sets forth the burden of proof in a murder charge. Baker did not request either instruction at trial, and now argues the court had a duty to issue them sua sponte.

### A. Legal Standard

A prisoner may claim relief based on instructional error only when the alleged error "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the

instructions as a whole and the trial record." *Id.* In other words, denial of defense instruction is not error if other jury instructions adequately address the theory of defense. *United States v. Mason*, 902 F.2d 1434, 1438 (9th Cir. 1990).

Like a defective instruction, the effect of omitting an instruction may be evaluated "by comparison with the instructions that were given." *Henderson*, 431 U.S. at 156. Significantly, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977); see also *Clark v. Brown*, 450 F.3d 898 (9th Cir. 2006) ("the burden on the habeas petitioner is 'especially heavy' where, as here, the error involves the failure to give an instruction") (citations omitted).

We need not decide here whether the trial court actually erred because the California Court of Appeal reasonably concluded the alleged omissions were harmless. Even if the two additional instructions were required, Baker cannot demonstrate that the court's failure to so instruct had a "substantial and injurious effect on the jury's deliberation and verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Beardslee v. Woodford*, 358 F.3d 560, 577 (9th Cir. 2004) (citing *Ghent v. Woodford*, 279 F.3d 1121, 1134 (9th Cir. 2002) and *Morris v. Woodford*, 273 F.3d 826, 833 (9th Cir. 2001)).

B. Antecedent Threats or Assaults Instruction

Baker first claims the trial court erred when it failed to instruct regarding antecedent threats or assaults by the victim. A model for such an instruction was introduced in 2003 as CALJIC No. 5.50.1.[2] He argued in his brief before the California Court of Appeal that specific instruction on antecedent threats or assaults was necessary to explain why he reasonably believed he needed to defend himself. He claims the evidence supported the theory that the 1984 incident in which Moore shot at him, combined with their ongoing domestic strife, led him to believe he was under attack and needed to defend himself. He did not request specific instruction on antecedent threats or assaults at trial. On appeal, as here, he claimed the court should nonetheless have issued the instruction sua sponte. The California Court of Appeal found no error, reasoning that although a court has a

---

[2]CALJIC No. 5.50.1 states:
    Evidence has been presented that on [a] prior occasion[s] the alleged victim [threatened] [or] [assaulted] [or participated in an assault or threat of physical harm upon] the defendant. If you find that this evidence is true, you may consider that evidence on the issues of whether the defendant actually and reasonably believed [his] [her] life or physical safety was endangered at the time of the commission of the alleged crime.
    In addition, a person whose life or safety has been previously threatened, or assaulted by [another] [others] is justified in acting more quickly and taking harsher measures for self protection from an assault by [that person] [those persons], than would a person who had not received threats from or previously been assaulted by the same person [or persons].

duty to instruct on the "general principles of law relevant to the issues presented," the court must give clarifying or "pinpoint" instructions only if a party requests them. Lodged Document C at 8-9. The Court of Appeal also highlighted evidence supporting the conclusion that any error was harmless.[3] Lodged Document C at 9-10.

This Court agrees with the Court of Appeal. The trial court gave eight instructions related to self defense: CALJIC Nos. 5.30 (self-defense against assault), 5.50 (assailed person need not retreat) 5.51 (actual danger not necessary), 5.52 (when danger ceases), 5.53 (self-defense not an excuse after adversary disabled), and 5.55 (plea of self-defense may not be contrived), in addition to other instructions related to the elements of Baker's offenses. CT at 218-223. The omission of an instruction like CALJIC No. 5.50.1 must be evaluated in this context and in comparison to all of these other instructions. *See Estelle*, 502 U.S. at 72; *Henderson*, 431 U.S. at 156 (finding no error where court omitted foreseeability instruction because other instructions required jury to find recklessness, which necessarily included a determination that the ultimate harm

---

[3]The Court of Appeal discussed this evidence under the rubric of Baker's ineffective assistance of counsel claim, which we discuss below. Its findings apply to this claim as well because Baker's two arguments stem from exactly the same facts. Both turn on whether the alleged omission was prejudicial.

was foreseeable).

In the context of the other instructions given, additional instruction would have added very little to the jury's deliberations. Under the CALJIC No. 5.30, Baker's jury was already required to find that Baker had reasonable grounds to fear for his safety. The jury was instructed: "It is lawful for a person who is being assaulted to defend himself from attack *if as a reasonable person he has grounds for believing* and does believe that bodily injury is about to be inflicted upon him." RT at 422 (emphasis added). As in *Henderson*, the omitted instruction would have merely isolated one element already included in the other jury instructions. *See Henderson*, 431 U.S. at 156. The instruction Baker now demands would have only reiterated that a particular subset of the evidence–relating to the 1984 incident–might provide the grounds for Baker to reasonably believe he was being attacked.

The jury heard detailed evidence relating to the shooting incident, which occurred over fifteen years earlier and was triggered by the unique circumstance of Moore finding Baker in bed with another woman. Lodged Document C at 9-10. During closing argument, defense counsel discussed the prior incident and invited the jury to consider that past conduct in evaluating Baker's claim of self-defense. It is unlikely that the jury, even with additional instruction, would have found that

this extremely remote and singular event provided a basis for Baker to fear for his life under the circumstances which led to his conviction. The jury had sufficient instruction to consider whether the prior incident provided reasonable grounds for Baker to fear for his safety, and concluded it did not. Thus, the omission of the particular instruction addressing antecedent threats, whether proper or not, does not rise to the level of a constitutional violation that would entitle Petitioner to habeas relief.

C. Burden of Proof

Second, Baker argues that the trial court should have given a specific instruction explaining the burden of proof on a claim of justifiable or excusable homicide. The trial court issued at least seven jury instructions relating to the prosecution's burden of proof, including two specifically related to the prosecution's burden with respect to the self-defense theory. RT at 413, 414, 418, 420, 421, 426, 427. Baker did not request additional instruction at trial, but now claims the court should nonetheless have issued sua sponte CALJIC No. 5.15.[4]

---

[4]CALJIC No. 5.15 states:
    Upon a trial of a charge of murder, a killing is lawful if it was [justifiable] [excusable]. The burden is on the prosecution to prove beyond a reasonable doubt that the homicide was unlawful, that is, not [justifiable] [excusable]. If you have a reasonable doubt that the homicide was unlawful, you must find the defendant not guilty.

The California Court of Appeal concluded that, even if failure to give CALJIC No. 5.15 was erroneous, Baker suffered no prejudice because the instructions actually given adequately conveyed to the jury that the prosecution retained the burden of proof to defeat a self-defense claim.

We agree with the Court of Appeal that any error was harmless. It is unlikely that additional instruction on the burden of proof would have changed the outcome. Contrary to Baker's assertion, the trial court's failure to sua sponte issue CALJIC 5.15 did not lessen the prosecution's burden of proving Baker was not justified to act in self-defense. The district court issued at least seven other instructions mentioning the prosecution's burden. RT at 413, 414, 418, 420, 421, 426, 427. Two instructions particularly emphasize the prosecution's burden in proving the absence of lawful self defense. The first, issued with other instructions relating to the assault charge, stated: "A willful application of physical force upon the person of another is not unlawful when done in lawful self-defense. The People have the burden to prove that the application of physical force was not in lawful self-defense." RT at 420. The second instruction, given together with instructions relating to the battery charge, reiterated: "The use of physical force against the person of another is not unlawful when it is done in lawful self-defense. The burden is on the people to prove that the use of force was not in lawful self-

defense." RT at 421. Though the trial court did not issue a burden of proof instruction specifically related to the attempted murder charge, the jury was repeatedly instructed as to the prosecutions burden of proof in general, and the burden of proof on negating self-defense in particular. Moreover, it is virtually impossible to see how Baker was prejudiced by the omission of an instruction on self-defense with respect to murder, since he was not convicted of attempted murder.

The jury heard extensive evidence supporting the conclusion that Baker was volatile and attacked Moore unprovoked. It could reasonably conclude the prosecution met its burden of showing beyond a reasonable doubt that Baker had not acted in self-defense. Even if we assumed that the jury could have reached a different verdict pursuant to an additional instruction, that possibility is "too speculative to justify the conclusion" that the omission "so infected the entire trial that the resulting conviction violated due process." *See Henderson*, 431 U.S. at 157. The Court of Appeal noted these significant facts in reaching its conclusion.

Taking the trial evidence and jury instructions as a whole, Baker cannot demonstrate prejudice rising to the level of constitutional error. Therefore, the California Court of Appeal's conclusion that Baker suffered "no prejudicial error" was not contrary to or an unreasonable application of federal law.

## 2. Ineffective Assistance of Counsel

As a fallback argument, Baker claims that, even if the trial court had no duty to give the two additional instructions sua sponte, his attorney was ineffective for failing to request them. The California Court of Appeal denied the claim. Lodged Document C at 9-10.

### A. Legal Standard

In order to establish ineffective assistance of counsel, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficient performance affected the result of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. A reasonable tactical decision by counsel with which the defendant disagrees cannot form a basis for an ineffective assistance of counsel claim. See *Strickland*, 466 U.S. at 690. The court will not consider whether another lawyer with the benefit of hindsight would have acted differently than trial counsel. *Strickland*, 466 U.S. at 689. In order to demonstrate prejudice, the defendant must show there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different. *Id.* at 694. The Supreme Court defines "a

reasonable probability" as a "probability sufficient to undermine confidence in the verdict." *Strickland*, 466 U.S. at 694.

B. Antecedent Threats or Assaults Instruction

With respect to the unrequested antecedent threats or assaults instruction, the California Court of Appeal concluded Baker had not shown his counsel acted unreasonably. Lodged Document C at 10. The court reasoned that "Counsel could have reasonably concluded it would be best to argue [the facts of the 1984 incident] but not request a specific instruction, particularly in light of the evidence of much more recent threats and violence *by defendant* . . .." Lodged Document C at 9.

This conclusion was not contrary to federal law. As the Court of Appeal discussed, counsel made a "reasonable tactical decision." *See Strickland*, 466 U.S. at 690; *Butcher v. Marquez*, 758 F.2d 373, 377 (9th Cir. 1985) (finding no ineffective assistance of counsel where the record showed that counsel chose not to request a specific instruction, and the record showed that the omission was reasonable). Baker's counsel engaged in an extended jury instruction conference with the trial judge and prosecutor. RT at 349 et seq. He requested the entire series of self-defense instructions and insisted on those which were most necessary for the argument he planned to make. RT at 366-67 (requesting CALJIC Nos. 5.30

and 5.50-5.56). Failure to request an additional pinpoint instruction, which was not included in the CALJIC models at the time, does not rise to the level of a constitutional violation under the "rigorous" and "highly demanding" standard for ineffectiveness under *Strickland*. See *Kimmelman v. Morrison*, 477 U.S. 365, 381-82 (1986).

Moreover, the Court of Appeal also noted Baker had not shown he was prejudiced as a result of the alleged error. Lodged Document C at 10. This conclusion was not contrary to federal law. Baker fails to meet the prejudice prong of the *Strickland* test for precisely the same reasons set forth above in part 1.B. Considering the evidence and other jury instructions as a whole, Baker suffered no injury from the absence of CALJIC No. 5.15.

C. Burden of Proof Instruction

The Court of Appeal did not explicitly address Baker's claim of ineffective assistance of counsel with respect to the unrequested burden of proof instruction. However, the court discussed the proper standard for ineffective assistance in the previous subsection of its opinion. Lodged Document C at 9-10. It also provided a thorough analysis of prejudice resulting from this omitted instruction. Lodged Document C at 10-11. Reviewing under either the deferential AEDPA standard or *de novo*, we conclude Baker's claim was properly denied because he fails to meet

the prejudice prong of the *Strickland* standard. Because the issue may be resolved on prejudice alone, we need not consider whether counsel's performance was deficient for failing to request additional burden of proof instruction. *See Strickland*, 466 U.S. at 697.

Even assuming Baker could show that counsel's performance was deficient, he cannot show prejudice rising to the level of constitutional error. This argument fails for precisely the same reasons discussed above in part 1.C. Whether the court failed to issue the instructions sua sponte or his attorney improperly failed to request them, Baker cannot show a reasonable probability that, but for the omitted instructions, the results would have been different. *United States v. Feldman*, 853 F.2d 648, 666 (9th Cir. 1988) (failure to request specific instructions does not amount to ineffective assistance of counsel when court's instructions were adequate), *cert. denied*, 489 U.S. 1030 (1989). Considering the evidence and other jury instructions as a whole, Baker suffered no injury from the absence of CALJIC No. 5.15.

Baker cannot show entitlement to relief on any of his remaining claims. Therefore, it is hereby

**ORDERED** that petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. The case is dismissed with prejudice.

19

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 16th day of December, 2008, at Seattle, Washington.

*/s/ Richard C. Tallman*
RICHARD C. TALLMAN
United States Circuit Judge
Sitting by designation